### VILAS *v.* BUTLER *et al.*

*(Supreme Court, General Term, Third Department.* February 24, 1890.)

JUDGMENT—VACATION—UNAUTHORIZED APPEARANCE OF ATTORNEY.

A motion to vacate a judgment, on the ground that the appearance of the attorney was unauthorized, is properly denied, after the death of the attorney, and of the defendant who retained him, where it appears that the moving party has been guilty of laches, and refuses to submit himself generally to the jurisdiction of the court, so that it is impossible to cross-examine him as a witness on the question of knowledge, and of authority from him to his attorney.

Appeal from special term, St. Lawrence county.

Action by Harriet H. Vilas, as administratrix of Samuel F. Vilas, deceased, against Peter Butler and others. Motion to vacate judgment was denied, and defendants appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Esek Cowen* and *Peter B. Olney,* for appellants. *Edwin Young,* for respondent.

LEARNED, P. J. These are appeals from orders denying motions to vacate and set aside a judgment and an appearance in the action. One motion was made by George B. Chase, a defendant, to set aside the judgment. Another by the sole executrix, devisee, and legatee of John N. Whiting, deceased, the attorney who appeared for Chase, to permit the appearance to be withdrawn and set aside, and to vacate the judgment. The two motions were heard together, and substantially present the same questions. The facts are, briefly, as follows: About April 10, 1854, Samuel F. Vilas, plaintiff's intestate, acquired a title by judgment and execution sales to certain personal property of the Plattsburgh & Montreal Railroad Company. Prior thereto the company had executed a mortgage on which a foreclosure was commenced, and a receiver was appointed February 21, 1857. There was a legal question whether the title of Vilas was good; it being claimed that the mortgage was a lien, although not filed as a chattel mortgage. The receiver bought this property of Vilas for $18,000, under an agreement, in substance, that if the title of Vilas was good the said $18,000 and interest should be a first lien on the premises to be sold in the foreclosure. If not good, he should receive nothing. It was finally decided by the commissioners of appeals, June 20, 1873, that the title of Vilas was good. *Hoyle* v. *Railroad Co.,* 54 N. Y. 314. Meantime, on September 13, 1867, Hoyle and others, who had become owners of a large amount of first mortgage bonds of this railroad company, entered into an agreement with John B. Page, Peter Butler, George B. Chase, and others to sell them said bonds, to organize a new corporation, and that the new corporation should acquire all the property of the company, subject to the Vilas claim. The agreement also contained a clause: "The purchasers are to assume the prosecution [query, defense] of that [the Vilas] suit, and to abide its result and judgment, and, if there shall be any recovery in said Vilas' favor, the purchasers agree to indemnify said parties of the first part and said Platt, as receiver, against the same." The railroad was finally sold, and a new corporation organized,—the Montreal & Plattsburgh Railroad Company. The property of that company was subsequently sold to the New York & Canada Railroad Company. That company, with others, was consolidated under

the same name, and finally the consolidated railroad was leased by the Delaware & Hudson Canal Company, so that the Delaware & Hudson Canal Company, as lessee, came into possession of the property bought by Vilas under execution, and of the railroad track, etc., of the Plattsburgh & Montreal Railroad Company, on which the $18,000 and interest were a lien.    In June, 1875, Vilas commenced an action to recover his $18,000 and interest.    He made these railroads and the Delaware & Hudson Canal Company parties, and also made said Page, Butler, and Chase parties.    He claimed that it be adjudged that said sum is a lien on the railroad property, and that the same be sold.    He also claimed a personal judgment for the amount against Page, Butler, and Chase.    In that action a separate answer was put in for Page, Butler, and Chase by John N. Whiting, as attorney.    The cause was tried, and on the 16th of April, 1878, a judgment was rendered personally against Page, Butler, and Chase for the amount claimed, which was also adjudged to be a lien on the property; but the property was not to be sold until execution returned unsatisfied against them.    On the 30th of June, 1880, an appeal was taken to the general term for this judgment by John N. Whiting, as attorney for Page, Butler, and Chase.    On the 17th of February, 1881, Vilas began an action on this judgment in Massachusetts against Chase.    In June, 1881, Chase answered in that action, denying that the supreme court of New York had ever acquired jurisdiction of the person or property of said Chase, and also alleging that the judgment was not final, because an appeal had been taken to the general term, and other matters.    In that action in Massachusetts the plaintiff was nonsuited by his own consent, May 21, 1883.    This was not a nonsuit on a trial, but was practically a voluntary discontinuance.    On the 11th of March, 1881, an attorney for Mr. Chase notified Mr. Whiting in New York that Mr. Chase had never been served with process, and had never authorized an appearance in the New York action, and that, if he should go on with the appeal which he had taken on behalf of Mr. Chase, he would do so without authority from Mr. Chase.    The appeal to the general term was argued May 16, 1883, and was decided June 2, 1883, affirming the judgment.    Thereupon Mr. Whiting, in behalf of Page and Butler, but not in behalf of Chase, appealed to the court of appeals, September 21, 1883, where the judgment was reversed as to the recovery against Page and Butler personally, and otherwise affirmed October 4, 1887, (106 N. Y. 439, 13 N. E. Rep. 743.)    In November, 1887, Chase applied to the court of appeals to amend the *remittitur* so as reverse the personal judgment as to him also.    This was denied without prejudice to any application to the supreme court.    Thereupon these motions were made; that on behalf of Mrs. Whiting, executrix, etc., for the purpose of relieving the estate of Mr. Whiting from any possible liability for appearing without authority.    On the 6th of October, 1887, the Delaware & Hudson Canal Company paid the whole amount of these judgments to the plaintiff, and took an assignment thereof; and it avers that it did this on the assumption that it could recover back the amount for said Chase.    The company also states that when in March, 1873, it bought for $1,000,000 the property of the Montreal & Plattsburgh Railroad Company and other companies of Page, a trust fund sufficient to meet this Vilas judgment was, as the company is informed, set aside from said money so paid.    Page died October 24, 1885, insolvent.    Whiting died April, 1885.    Vilas died after the appeal to the court of appeals.    Chase has always been a non-resident of this state, residing until recently in Boston, Mass., now in Marlborough, N. H.

The first ground which the counsel urge on this appeal is that the judgment is joint, and that the reversal by the court of appeals as to Page and Butler entitles him to have the judgment against him canceled.    No such reason is given in the notice of motion.    That is put on the ground that the judgments are null and void, because he was not served with process, and did not au-

thorize an appearance. The court of appeals refused to reverse the judgment as to Chase, and to amend the *remittitur* accordingly. Chase appears. now only specially for the purpose of making this motion, and puts himself on the ground that there never was a valid judgment against him.

We have examined the cases cited by the counsel for Mr. Chase on this point. We think that many of them might have been urged (and perhaps were) upon the court of appeals to induce them to reverse the personal judgment against all of the defendants. But as they refused to do this, when the matter was called specially to their attention, they must have held that they could reverse as to Page and Butler, and leave the judgment against Chase unaffected. They may have thought the liability to be several as well as joint. The application to this court which was permitted by their order referred, we suppose, to the second ground argued of the present motion. Chase does not now appear generally in the action. A decision on the question as to the effect of the reversal upon the judgment against him would not be binding, as he is not in court, except to object that there is no judgment.

That second ground is that Chase was not served, and did not authorize the appearance by Whiting. Chase was a party to the contract of September 13, 1867. He knew, therefore, of the Vilas controversy, and was to assume the conduct of it, and was to indemnify the vendors against the claim. Page, his associate in the transaction, was evidently the active man in the negotiations. In June, 1873, the Vilas claim was finally determined to be good. We must think that Chase's statement that till February, 1881, he did not know of any claim which Vilas had against him, needs qualification; as he could not have been ignorant of a claim against which he had agreed to indemnify. At any rate, he then was informed of the claim, and that it was in judgment in this state. He was further informed in March of that year that Mr. Whiting (who was an attorney of high standing) had appeared in the action for him and other defendants, and had litigated the action for them. He was then further informed that Whiting had taken an appeal to the general term for him and other defendants. And in the Massachusetts action he set up the pendency of an appeal by the Delaware & Hudson Canal Company as a ground why the judgment was not final. What, then, did he say to Whiting? "If you go on with that appeal, you do it without authority from Mr. Chase." He did not even forbid any further proceeding with the. appeal. He made no attempt to have the unauthorized appearance set aside, or to prevent Whiting from acting for him. At that time Whiting and Page were living, and the truth could be found out on investigation whether Page had not sufficient authority to retain an attorney for both. Chase remained quiet, and allowed the appeal to be argued and decided two years afterwards. He does not say in his affidavit that he was ignorant of this argument and affirmance, or that he was ignorant of the further proceedings by which the cause went to a final decision. But it is not until after the success of his codefendants in that court that he attempts to relieve himself from the judgment of which he knew seven years before. And it is not till the death of Page and of Whiting has closed the mouths of those who might perhaps show authority for the appearance that he comes into court to deny authority. It is true that the assumption of agency does not of itself prove agency. But if Page had brought the summons and complaint to any lawyer, even the most careful, with the request to defend for the three personally charged, the lawyer would never have hesitated to believe that he was authorized by all. True, this readiness to trust a respectable client does not bind Chase. But when an appearance has thus been put in, and a case has been litigated by a most reputable attorney and counsel, it does require on the part of one who disavows the authority the utmost promptitude in action. It is utterly unreasonable that Chase should not at once have taken the very proceeding in which he is now engaged.

It is said by Chase's counsel that Vilas was notified by Chase's answer in Massachusetts that Whiting was not authorized. The answer does not expressly say that; only that this court had not acquired jurisdiction of the person or property of defendant Chase. It might have meant that a voluntary appearance of a non-resident would not confer jurisdiction; and, indeed, the principal part of the answer denies that the judgment is final. But even if Vilas were then notified that Chase claimed that Whiting had not been retained by him, what could Vilas do? Here he had a judgment. It was too late to serve on Chase, if Whiting had not been authorized to appear for him. The defendants had appealed, and, when unsuccessful in their first appeal, they appealed again. Vilas was all the time doing what he could to collect his claim. If Whiting's appearance for Chase was unauthorized, Vilas had no remedy. Furthermore, we may well believe that Vilas still thought that Whiting had been duly authorized to appear, notwithstanding Chase's late disclaimer. And very naturally, because Chase, during all this time, took no steps to end this alleged unauthorized appearance. Even if it were a mere case of agency, Chase should have stopped the action of his agent. This he could readily have done by such a motion as he now makes. We do not assert that, if Chase did not authorize Whiting to appear, and if he was not served, and has not recognized the appearance by delay or otherwise, the judgment is valid against him. But in view of the laches of Chase, and of the death of Page and Whiting, Chase should not have this remedy by special motion, but should be left to his action, in which he can be cross-examined, should he testify.

Another point made is that the judgment of the court of appeals held that the mortgaged property was the primary fund; and that, inasmuch as this property is in the hands of the Delaware & Hudson Canal Company, and they have paid Vilas, the debt is discharged, and this judgment should be canceled. But here arises again the objection which has been already mentioned. Chase appears for the purpose of this motion, and for no other purpose. He does not come into this court as a litigant, submitting himself to its jurisdiction, and therefore bound by its decision. He comes and says: "You have no legal judgment against me, for I never was sued, and I never appeared. Therefore I ask you to set aside and vacate this nullity. But, besides this, the judgment is equitably paid, and should be discharged." Now, if Chase wishes to obtain equitable relief against this judgment, he must come fully into court, not stand outside of the door, and put in one hand through a narrow opening. He must appear, so that he will be bound by our decision, and so that he will not be able, seven years after, to say that his counsel were only authorized to assert that he had never been sued, and that he was not bound by the judgment. He has limited their authority by the language of the notice of motion; and, in view of the past history of this case, we cannot venture to go beyond their express authority.

If the view urged by them in regard to the effect of the payment to the plaintiff by the Delaware & Hudson Canal Company be sound, Chase should bring an action to declare that the judgment is thus satisfied. We have not thought it necessary or desirable to discuss the legal rights of the defendant, if in fact he did not expressly or impliedly authorize Whiting to appear for him. We think that his laches, combined with the deaths of Page and Whiting during his unreasonable delay, and the impossibility of subjecting him to a cross-examination, justified the special term in refusing the relief on this motion. As to the motion by the executrix of Mr. Whiting, the affidavits show no ground for setting aside the appearance, inasmuch as they do not aver that it was unauthorized, even to the belief of deponent. We suppose that that motion was rather in aid of Mr. Chase's motion, by way of appeal to the sympathy of the court on account of the very contingent possibility of a claim against Mr. Whiting's estate,—a danger which seems to us rather re-

mote. The orders are affirmed, each with $10 costs and printing disbursements; but this is without prejudice to any action which Chase may be advised to bring to satisfy or set aside this judgment. All concur.