OPINION OF THE COURT
Edward H. Lehner, J.
This motion raises the question of whether condominium common charges should be paid to the condominium board by a receiver in a mortgage foreclosure action as part of the expenses of maintaining the premises under RPAPL 1325 (2) in light of the ruling in the recent case of Bankers Trust Co. v Board of Mgrs. (81 NY2d 1033 [1993]), where the Court of Appeals held that the lien for such charges upon foreclosure is subordinate to the lender’s first mortgage.
In December 1991 plaintiff, First New York Bank for Business (FNY), commenced this action to foreclose a first mortgage encumbering the garage condominium unit (the Garage Unit) owned by defendant 155 E. 34 Realty Co. Pursuant to an ex parte application made by FNY, Thomas Tedeschi was appointed receiver (the Receiver) by order dated January 12, 1992 (the Order). The Order provides that the Receiver is "appointed for the benefit” of FNY and is authorized and directed "to pay the taxes, assessments, water charges, sewer rents, electric bills, and other charges on the Premises, in a manner consistent with the other provisions of this Order” (emphasis added). After "paying the expenses of the management and care of the” Garage Unit, the Receiver was directed to "retain the balance of the monies which may come into his hands until further order of the court”. The Order further states that any party to this action may apply to the court at any time for instructions or authority to enable the Receiver to properly fulfill his duties.
The defendant Board of Managers of the Warren House Condominium (the Board) did not interpose an answer to the *660 complaint and waived service of all papers except notice of foreclosure judgment and sale. By notice of motion dated April 27, 1992, FNY moved for a default judgment and a reference to compute. The motion was granted and a Referee was appointed to ascertain the amount due. A draft proposed report with respect thereto was circulated by FNY on August 18, 1992. However, on November 13, 1992 the State Banking Superintendent appointed the Federal Deposit Insurance Corporation (FDIC) receiver of FNY and, until the making of this motion by the Board on March 18, 1993, no further action had been taken in this matter.
Since the Receiver’s appointment in January 1992, no common charges have been paid to the Board with regard to the Garage Unit. The Board, pursuant to this motion, requests that the Receiver be directed to pay the past due common charges and special assessments (which from the date of the appointment to the date of such motion allegedly totalled $69,770.85, excluding interest and late fees) as other charges and expenses of the management and care of the Garage Unit.
Without contesting the amount of back due common charges, FNY maintains that the charges constitute a lien which is, pursuant to Real Property Law § 339-z, junior to its first mortgage, and thus should not be paid by the Receiver. FDIC cross-moves to substitute itself in its capacity as receiver as party plaintiff in the place of FNY.
DISCUSSION
The cross motion for permission to substitute the FDIC as receiver of FNY as plaintiff is granted without opposition, and it shall hereafter be deemed the plaintiff in this action.
The statute which addresses the relationship between a statutory lien for common charges and the lien of a first mortgage is Real Property Law § 339-z which provides: "The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, and (ii) all sums unpaid on a first mortgage of record or on a subordinate mortgage of record held by the New York job development authority or held by the New York state urban development corporation. Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee.”
*661 In its decision of June 8, 1993 in the Bankers Trust case (supra) the Court of Appeals interpreted this provision to mean that the lien for common charges does not (unless there are surplus monies) survive foreclosure of a first mortgage. In light of this decision, the Board cannot successfully assert that its lien has priority to the first mortgage held by the FDIC. Nor is there merit to the Board’s argument that the mortgage and condominium’s bylaws subordinate the mortgage to the lien for common charges.
In the alternative, the Board urges that the Receiver be directed to pay monthly common charges as rent,* claiming that such payment would be consistent with the Receiver’s obligation to preserve the premises under RPAPL 1325 (2) and the Order.
This argument was accepted in the case of Board of Mgrs. v Chelsea Realty Assocs. (NYLJ, Aug. 5, 1992, at 22, col 5 [Sup Ct, NY County]). There it was held that the receiver was properly authorized and directed to pay monthly common charges for the liened premises pursuant to Real Property Law § 339-aa and RPAPL 1325 (2) because they "are expenses necessary to operate the premises” and can be considered by the receiver to be "an expenditure incurred for the preservation and maintenance of the premises during the pendency of the receivership” (supra, at 22, col 5).
In considering the question it should initially be noted that a receiver in a mortgage foreclosure action "is an officer of the court and not an agent of the mortgagee or the owner * * * [whose] duty is to preserve and operate the property, within the confines of the order of appointment and any subsequent authorization granted to him by the court.” (Kaplan v 2108-2116 Walton Ave. Realty Co., 74 AD2d 786 [1st Dept 1980]; see also, Matter of Schwartzberg v Whalen, 96 AD2d 974 [3d Dept 1983].) Moreover, a receiver can only make payments with respect to the subject property from funds received in his capacity as receiver (Brynwell Mgt. Corp. v Mill Riv. Realty, 112 Misc 2d 838 [Sup Ct, NY County 1981]), and is not personally liable for any receivership obligation so long as he acts in good faith (149 Clinton Ave. N. v Grassi, 51 AD2d 502 [4th Dept 1976]; Meltzer v Grazi, 10 AD2d 869 [2d Dept 1960]).
*662 Clearly, under the Bankers Trust decision (supra), if FNY had not applied for the appointment of a receiver, any lien of the Board for unpaid common charges would (absent surplus monies) be extinguished upon a foreclosure sale under the mortgage. But here, the bank elected to preserve what it considered an asset, to wit, an operating garage.
 Since the purpose of receivership is to preserve property and, by profitably operating an existing business, to provide a fund that can be applied to the reduction of the amount owing under the mortgage, in circumstances where a mortgagee bank, as here, chooses to apply for the appointment of a receiver it should not be entitled to benefit therefrom unless all expenses in connection with the operation of the business under the receivership are paid in full. One of the basic obligations of a business operating (with or without a receiver) in premises not owned by it is the payment of rent. Rent in a building owned as a condominium takes the form of common charges. There being no landlord-tenant relationship between a condominium’s board and the unit owner, a summary proceeding to evict for nonpayment is unavailable. Hence, I conclude that a receiver of a business in a condominium unit must, upon request, pay the common charges assessed against the unit during the period of the receivership. However, since special assessments generally are for the payment of capital improvements which will benefit the premises for a period well beyond the expected term of the receivership, I find that the obligation for such assessments should not be imposed upon the receiver unless it can be shown that the assessment was for expenses applicable to the period of the receivership. That has not been demonstrated in the case at bar.
Notwithstanding such obligation, a receiver cannot be ordered to pay out more cash than he or she has received. Here the plaintiff and the Receiver both assert that there is insufficient monies in the possession of the Receiver to pay all obligations incurred by the business during the period of the receivership. Since there is no valid reason why one obligation of the business (other than for taxes and for wages due employees) should be preferred over others, the alleged inadequacy of the funds available to pay past due common charges creates a dilemma for the Receiver.
It should be noted that the receivership order here did not, in contrast to the order in the Chelsea Realty Assocs. case (supra), contain a direction for the payment of common *663 charges. Hence, in light of the limited precedent on the issue and the lack of any application by the Board until the making of this motion for the payment of such charges, it would appear that the Receiver acted in good faith in theretofore not making such payments.
With respect to any deficiency in the Receiver’s account, CPLR 8004 (b) provides that if at the termination of the receivership there are insufficient funds in the possession of a receiver to pay his compensation and "the necessary expenditures incurred” by him, the court "may direct the party who moved for the appointment of the receiver to pay such sums”. In discussing this section the Court in Litho Fund Equities v Alley Spring Apts. Corp. (94 AD2d 13, 15-16 [2d Dept 1983]) initially observed that "it is the usual rule that a receiver should discontinue an insolvent business”, but stated that in certain circumstances it is appropriate to continue such a business. Although recognizing that a receiver is an officer of the court and that a moving party therefore has no control over the receiver’s expenses, the Court set forth certain factors for a Judge to consider in determining whether to exercise discretion under said section to order the receivership applicant to make up a deficiency in the receivership account. Among such factors are: (i) the benefit received by such party; (ii) the degree of necessity of the expenses; and (iii) whether the applicant was aware that the income would be insufficient to pay all of the receiver’s expenses. (See also, Long Is. City Sav. & Loan Assn. v Bertsman Bldg. Corp., 123 AD2d 840 [2d Dept 1986]; Hirsch v Peekskill Ranch, 100 AD2d 863 [2d Dept 1984].) In East Chatham Corp. v Iacovone (25 AD2d 622, 623 [1st Dept 1966]), it was held that a party substituted for one that had made the receivership application "stands in the shoes of the original plaintiff both as to rights and obligations” and thus could be held liable to make up any deficiency in expenses and allowances upon settlement of the receiver’s account.
In view of the foregoing, the parties have various choices available to them. If it is in fact true that the operation of the Garage Unit is a losing proposition, the plaintiff may wish to terminate the receivership. The lien for subsequently accruing common charges would then be subject to the Bankers Trust ruling with respect to priority. If the plaintiff does not so terminate the receivership and the Board is not paid the amount owing for common charges, it may seek the termination of the receivership or consider making an application *664 upon termination of the receivership pursuant to CPLR 8004 (b) for the payment of any unpaid common charges. In determining its position, the Board undoubtedly will consider the effect on the tenants of the building of the possibility of not having an operating garage in the premises.
It is hoped that the parties can come to an agreement as to the future operation of the Garage Unit. If they do not agree on the monies to be paid by the Receiver under this decision, they are directed to appear for a conference in this Part at 2:00 p.m. on September 21, 1993 with respect to such issue.

 FDIC’s claim that the Board waived the right to seek the relief requested is rejected as the Order itself provides for applications to amend its contents. Furthermore, the Board’s action is not barred by the pendency of another action in which the Board is seeking to recover a money judgment from the owner of the Garage Unit (see, Real Property Law § 339-aa).