**RESOLUTION TRUST CORP.,
et ano., Plaintiff,**

v.

**J.I. SOPHER & CO., INC.,
et al., Defendants.**

**No. 94 Civ. 7189 (DC).**

United States District Court,
S.D. New York.

. June 18, 1996.

---

Golenbock, Eiseman, Assor & Bell by Jeffrey T. Golenbock, New York City, for Plaintiff RTC Mortgage Trust.

Wormser, Kiely, Galef & Jacobs by Glenn M. Azzinari, New York City, for Defendant Board of Managers of OTIC Professional Condominium.

Christopher E. Chang, Successor Receiver, Doar, Devorkin & Rieck, New York City.

### MEMORANDUM DECISION

CHIN, District Judge.

In this foreclosure action, defendant Board of Managers of the OTIC Professional Condominium ("OTIC") seeks an order requiring the court-appointed receiver to pay the monthly condominium common charges that have accrued on the subject property during the period of receivership and as they become due in the future until the foreclosure sale. Plaintiffs Resolution Trust Corporation (the "RTC") and RTC Mortgage Trust 1995–S/N1 (the "Trust") oppose this motion, arguing that under New York law, the interest of a first mortgagee in a condominium property is superior to the lien of the condominium board of managers unless the declaration of an exclusive non-residential condominium provides otherwise.

For statutory and equitable reasons, OTIC's motion is granted in part and denied in part. OTIC is entitled to be paid the accrued common charges.

### BACKGROUND

In November 1994, at the RTC's request, I appointed a receiver (the "Receiver") to take possession of the condominium units that are the subject of this action.[1] The Receiver's duties included negotiating an agreement for the surrender by the tenant of its lease on the premises, entering into other sublease or

---

**1.** On October 31, 1995, I signed an order appointing Christopher E. Chang, Esq. as the Successor Receiver, upon the Receiver's resignation of his duties.

lease agreements, and taking all necessary steps to protect the interest of plaintiffs' security. The condominium units were vacant at the time the Receiver was appointed, because the tenant of record, Psychiatric Institutes of America ("PIA"), had vacated the premises.

On January 17, 1995, the Receiver negotiated a settlement with PIA, which paid the Receiver $587,272.20. Defendant J.I. Sopher & Co., Inc. ("Sopher"), the owner of the premises, deposited an additional $438,871.95 with the Receiver representing PIA's security deposit, plus interest. PIA paid this money in lieu of rent for the balance of its lease term, which would have run through August 31, 1998. In an order dated February 25, 1995, I approved the Surrender of Lease Agreement, in part because the Agreement served to protect and preserve the property in question. I noted that "fifteen months of rent will be realized from PIA and the property can be relet, thereby producing a future income stream to meet ongoing property expenses." The Receiver sought tenants after the Surrender Of Lease Agreement was approved, but to date, has not been able to relet the premises.

At the time this motion was filed, sixteen months of unpaid common charges, totaling $122,976, had accrued. The parties agree that a foreclosure sale will not produce proceeds sufficient to pay both the accrued maintenance charges and the unpaid amounts on the first mortgage.

### DISCUSSION

Plaintiffs rely on N.Y.Real Prop.Law § 339–z (McKinney 1989) in opposing the motion. In pertinent part, § 339–z provides:

The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes ... and (ii) all sums unpaid on a first mortgage of record.... Upon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee....

Notwithstanding the above, the declaration of an exclusive non-residential condomini-

um may provide that the lien for common charges will be superior to any mortgage liens of record.

Hence, under § 339–z, all sums unpaid on a first mortgage take priority over liens on unpaid condominium common charges. The precise issue presented here, however, is whether that priority applies with respect to condominium common charges that accrue *prior* to the foreclosure proceedings, when a receiver has been appointed at the mortgagee's request. I hold that it does not, for statutory and equitable considerations.

The language of the statute is not clear with respect to when the first mortgagee's lien takes priority. The question of priority, however, usually need be resolved only upon the foreclosure sale, when the amount of the proceeds are determined. Obviously, the priority of liens will not be an issue if the proceeds from the foreclosure sale are sufficient to cover both the accrued condominium common charges and the unpaid sums on the first mortgage. The decision of the New York State Court of Appeals in *Bankers Trust v. Board of Managers of the Park 900 Condominium*, 81 N.Y.2d 1033, 600 N.Y.S.2d 191, 192–93, 616 N.E.2d 848, 849–50 (1993), confirms that the key event is the foreclosure sale. The court held that "[t]he first mortgage foreclosure *sale*, except to the extent that there are proceeds in excess of the first mortgage, would extinguish all prior liens ... and vest full title in the grantee." *Id.*, 600 N.Y.S.2d at 193, 616 N.E.2d at 850 (emphasis added); *see also id.* at 192, 616 N.E.2d at 849 (referring to "proceeds of the foreclosure sale").

Any doubt that § 339–z, as interpreted by *Bankers Trust*, addresses the issue of priority upon the foreclosure sale (rather than during the pendency of the foreclosure proceedings) has been resolved by the First Department in its recent decision in *Ezriel Equities Assoc., L.P. v. 157 E. 72nd St. Assoc.*, —— A.D.2d ——, 638 N.Y.S.2d 470, 471 (1st Dep't 1996). The *Ezriel* court observed that the issue in *Bankers Trust* was whether the unpaid common charges should be paid out of proceeds of the foreclosure sale, whereas the issue in *Ezriel* was the payment of common charges accruing from rental pro-

ceeds during the *pendency* of the foreclosure action. *Id.* 638 N.Y.S.2d at 471. The court held that the receiver properly applied rental income from the property to the payment of common charges during the pendency of the foreclosure action. *Id.* at 471; *see also First New York Bank v. 155 E. 34 Realty Co.*, 158 Misc.2d 658, 601 N.Y.S.2d 990, 993 (S.Ct. N.Y.Co.1993). Accordingly, § 339–z is not a statutory bar to payment of common charges during the pendency of foreclosure proceedings.

 In addition to statutory considerations, equitable considerations support the conclusion that the Successor Receiver should pay the common charges. Receivers are appointed to preserve the premises and "provide [the mortgagee with] a fund that can be applied to reduce the amount owing under the mortgage." *First New York Bank*, 601 N.Y.S.2d at 992–93. When a mortgagee applies for a receiver, "it should not be entitled to benefit therefrom unless all expenses in connection with the operation of the business are paid in full." *Id.* at 993.

■ Plaintiffs in this case benefited from the Receiver's services. First, the RTC specifically asked the Court to appoint a Receiver. Second, the RTC benefited from the efforts of the Receiver when he negotiated the approximately $1 million buy-out with PIA. Third, the Receiver continued to seek tenants to relet the space vacated by PIA. RTC and the Trust should not be allowed to benefit from the Receiver's services and the leasing of the premises without having to pay OTIC a portion of the funds that have been generated.[2] Because fifteen months' worth of rent was obtained from PIA, the Successor Receiver is to pay OTIC fifteen months' accrued common charges. I will not require the payment of any common charges beyond that, however, because the efforts to find a new tenant have not been successful and the receivership is no longer benefiting plaintiffs.

2. Both parties cite 12 U.S.C. § 1825(b)(2) in their briefs. For purposes of this decision, however, that statute is inapplicable. Section 1825(b)(2) states that involuntary liens may not attach to property during the period of RTC receivership. Under this provision, the RTC would be liable for common charges incurred only when it was the receiver, and the Trust

## CONCLUSION

For the reasons set forth above, OTIC's motion to grant and approve the payment of the common charges at issue is granted to the extent that the Successor Receiver is hereby directed to pay fifteen months' worth of common charges to OTIC.

SO ORDERED.

would be liable only for subsequent assessments. *Old Bridge Owners Coop. Corp. v. Township of Old Bridge*, 914 F.Supp. 1059, 1065 (D.N.J.1996). Because all the money paid to OTIC will come out of a common fund now controlled by the Successor Receiver, it is unnecessary to discuss which party is responsible for which payments.