GEORGE ARTHUR BETZ and Another, Appellants, v. NEW JERSEY REFRIGERATING COMPANY, Defendant, Impleaded with HENRY CLAY GREENBERG and Others, Respondents, and OTTO A. LEMBECK, Individually, and Others, Appellants.

First Department, February 13, 1931.

*John J. Crawford,* for the appellants.

*Eugene L. Bondy* of counsel [*F. Sidney Williams* with him on the brief; *Bondy & Schloss,* attorneys], for the respondents.

MARTIN, J. The New Jersey Refrigerating Company, a New Jersey corporation formerly known as Lembeck and Betz Eagle Brewing Company, was in process of voluntary dissolution, which proceedings were commenced in May, 1923, by filing with the New Jersey Secretary of State a consent of stockholders. Thereupon, by virtue of the statutes of New Jersey, its directors became liquidating trustees.

Dissensions arose among the trustees to such an extent that they could not function, and on June 13, 1923, the New Jersey Court of Chancery appointed Edward H. Wright and Frank J. Bock as receivers with power to collect the debts and property belonging to the corporation, to prosecute and defend suits, to take into their possession all the property of the corporation and to execute deeds thereof. The corporation owned over one hundred parcels of real property in the State of New Jersey, worth upwards of two million dollars, and twenty separate parcels of real property and other valuable property and property rights in the State of New York.

The receivers proceeded to arrange for the sale of the real property

and actually sold many of the New Jersey parcels. *They attempted to convey one of the New York city parcels situated at First avenue and Forty-third street, but were unable to do so because of the refusal of the title company to approve the title because ancillary receivers had not been appointed in New York State.* Thereupon the present plaintiffs commenced an action to have such ancillary receivers appointed. After all the real property has been sold they now question the right of the court to appoint such receivers. In that action the summons and complaint were served on Arthur McAleenan, the designated agent of the corporation in New York, on July 11, 1924. The defendant appeared, served an answer and an amended answer. The case being thus at issue, these plaintiffs moved for judgment on the pleadings, asking that judgment be entered appointing ancillary receivers. The defendants consented and the motion thus made by the plaintiffs was granted.

About the same time all of the New York stockholders of the corporation intervened in the action and, upon affidavits made by them, as well as upon the pleadings, prayed for an order appointing ancillary receivers. These New York stockholders owned approximately one-half of the entire amount of stock outstanding. All of the New York stockholders objected to the selection of Messrs. Bock and Wright as ancillary receivers, charging them with gross incompetency and grave derelictions in the discharge of their duties as domiciliary receivers and asking that the court appoint ancillary receivers of its own selection, suggesting that the appointees be citizens of New York, who would at all times be amenable to the process of the New York court.

The plaintiffs' motion for judgment appointing ancillary receivers, *being consented to by the defendants,* was granted. The motion made by the New York stockholders was also granted, the court holding that sufficient reasons appeared for appointing citizens of this State and that ample reason was shown for not appointing Messrs. Bock and Wright. Thereupon the court selected Mr. James J. Frawley and Mr. Henry Clay Greenberg as the ancillary receivers.

The sole objection to such appointment appears to have been that the court selected the ancillary receivers and refused to appoint those selected by the plaintiffs, to whose selection one-half of the stockholders objected.

While this litigation was in progress, Messrs. Frawley and Greenberg managed the New York property, but because of the differences between these plaintiffs and Messrs. Bock and Wright, it was difficult to effect sales of the New York real estate, or to convey title thereto. Liquidation in New York of the assets was impossible under the then existing conditions. Finally, to remedy this

condition, the ancillary receivers, Messrs. Frawley and Greenberg, through their counsel, Messrs. Bondy and Schloss, proposed a plan of harmonious action, and, after many conferences, they obtained and caused to be executed a stipulation or agreement which provided that the appeal from the judgment appointing Messrs. Frawley and Greenberg as ancillary receivers would be discontinued; that both the domiciliary receivers and the ancillary receivers would join in deeds to purchasers of New York real estate; that $70,000 would be retained by the ancillary receivers to cover their commissions and the fees of their counsel; that all cash above that amount would be remitted forthwith to the domiciliary receivers; that purchase-money bonds and mortgages paid to the ancillary receivers on sales of New York property would be made out to the domiciliary receivers; and that all of the foregoing would be without prejudice to any claims for commissions or allowances.

The ancillary receivers and their counsel obtained the approval of the New York Supreme Court to the contracts of sale theretofore made and arranged for the sale of all other parcels. Most of the sales were made by contract, through brokers, some were sales at auction. Until titles were closed, the ancillary receivers continued to manage and operate the properties. They and their counsel protected the interests of stockholders in numerous litigations which were in progress affecting property of the corporation in various parts of New York State; reduced all of the New York assets to cash and were engaged over a period of nearly three years in the necessary work of the receivership. Before this work ended, and on September 1, 1926, Mr. James J. Frawley, one of the ancillary receivers, died. Thereupon, *by consent,* an order of this court was made and entered providing that from and after the death of Mr. Frawley, Mr. Henry Clay Greenberg should be the sole ancillary receiver in New York and from that time he acted in that capacity.

When all of the New York real estate had been sold, and all other New York assets reduced to cash, Mr. Greenberg and his counsel prepared an account which was submitted to the court for approval, together with an application for proper allowances to the receiver and to his counsel. The account, and the report which was made part thereof, showed that a gross estate of $307,291.45 had been administered by the ancillary receivers, and the report and petition showed in detail the work that had been done by the counsel for the ancillary receiver.

The court approved the account and made its order allowing the receiver the sum of $5,364.47 as his commissions, and to his counsel the sum of $15,000 as counsel fee, both being in addition to allow-

ances previously made, from which order the present appeal was taken.

It is now contended by appellants that the court was without power to make the original order appointing the ancillary receivers. There is no doubt that when the appellants' attorney applied for the appointment of ancillary receivers in this State, because of the fact that there were upwards of twenty pieces of real property in the State of New York, to which it is said the domiciliary receivers could not give satisfactory titles, the court had a right to appoint ancillary receivers for the protection of that property and the preservation of the assets. (*Horton* v. *McNally Co.*, 155 App. Div. 322; *Mitchell* v. *Banco de Londres y Mexico*, 192 id. 720; *Glines* v. *Supreme Sitting Order of Iron Hall*, 20 N. Y. Supp. 275, 277; *Andre* v. *Beha*, 211 App. Div. 380, 392.)

The respondents say there are several other reasons why the contention of the appellants should not prevail on this appeal. The appellants are estopped for the reason that they requested the appointment of ancillary receivers and accepted all the benefits of the receivership.

They not only initiated the proceedings for the appointment but consented to all the steps taken during the pendency thereof. The property was sold only after the New Jersey receivers joined in the sale, so that a title could be transferred which would meet the approval of the title companies.

The judgment herein was granted pursuant to their application. They not only acceded to its terms but received the benefits thereof and induced the ancillary receivers to rely thereon and act in accordance therewith.

In *Horton* v. *McNally Co.* (*supra*) the court said: "It is a well-established principle that that to which a person assents is not esteemed in law an injury, * * * and it seems reasonably certain that the Georgia-Florida Company not only assented to the appointment of the receiver in this case, but * * * that it has had the benefit of the performance of the contract with the city of New York, under which it not only hoped to secure a return of its advancement, but to share in the profits which might accrue. * * * If it is aggrieved, then it is estopped to urge the point because it has accepted the benefits of the order to which it had already assented, by having the affairs of the Thomas McNally Company * * * administered under the personal supervision of its own president, who must be presumed to be acting in good faith, not alone to his corporation, but in his relations as an officer of the court.

" * * * The objection now urged is not that the Supreme

Court has not general jurisdiction of actions by judgment creditors, but that it has no jurisdiction of the subject-matter of this action because the corporation being created under the laws of the State of Pennsylvania, it is not competent for our courts to take jurisdiction of an action which has for its object the dissolution of the corporation and the winding up of its affairs. But it unquestionably has jurisdiction of the property of the corporation within this State, and the corporation having come in and asked for the appointment of the receiver by its answer it would not be permitted to question the jurisdiction of the court, and it is difficult to understand how a mere general creditor, who has likewise consented to the appointment of the receiver, can be in a better position than the corporation itself."

In addition the plaintiffs stipulated to end the litigation by withdrawing the appeal from the judgment appointing the ancillary receivers.

The appellants also contend that the commissions allowed the receiver are in excess of the sum which should have been allowed and in violation of the law fixing such fees; that the allowance to the receivers should have been $4,480.32. The court has allowed a little less than five per cent of what it decided was the value of the assets which came into the hands of the receivers, and which were disbursed or transferred by them. The appellants contend that $87,606.45 came into the hands of the receivers but the accounting shows that $307,291.45 is the correct amount. These amounts are arrived at by different theories.

In several instances when a piece of property was sold a part of the purchase price was paid in cash and the remainder by mortgage. These mortgages were taken direct by the receivers in New Jersey, but in permitting such a course the receivers in New York did not waive their right to commissions on the purchase price or any rights they had under the receivership, for it was so stipulated in an agreement reserving all rights of the receivers and their attorneys.

It is clear, therefore, that when this property was sold for upwards of $300,000 the fact that only $87,000 was taken in cash and the balance in mortgages, would not deprive the receivers of their commissions and irrespective of what we may think about the commissions, the court properly applied the law with reference to the same. The right of a receiver to such commissions has been definitely settled. He is not limited to commissions based upon the cash which actually comes into his hands. The amount of his commission is to be computed upon the entire fund in his hands, whatever may be the nature of the property, and he is not restricted

to that part of the fund which is in the form of cash. (*Matter of Smith Co.*, 31 App. Div. 39.)

The next question to be decided is the allowance to the attorneys. The court allowed $15,000 in addition to $2,500 and $7,500 previously allowed. We believe that a total allowance of $15,000 to the attorneys would be sufficient. It would serve no useful purpose to review at length the work alleged to have been done by the attorneys. We are convinced that the allowance is not warranted by the work performed. The liquidation of this corporation in the State of New York was not a difficult matter. Aside from the litigation with reference to the receivership substantially all that was necessary was to sell the real estate and close the titles.

It is argued that the work performed by the receivers and their attorneys was in part a duplication of the work performed by the domiciliary receivers and their attorneys. The failure of the parties to co-operate or to agree on any course suggested was bound to create confusion and appears to have been responsible for any duplication of work and the expense incident thereto.

The order should be modified to the extent of reducing the counsel fee as indicated, and as so modified affirmed.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Order modified by reducing amount directed to be paid to the attorneys for the ancillary receivers and for the surviving ancillary receiver, in addition to the intermediate allowances heretofore paid to said attorneys, to the sum of $5,000, and as so modified affirmed, without costs.