LITHO FUND EQUITIES, INC., Respondent, v ALLEY SPRING APARTMENTS CORP. et al., Defendants, and H. J. KALIKOW & COMPANY, INC., Appellant.

Second Department, May 31, 1983

APPEARANCES OF COUNSEL

*Buckley, Kremer, O'Reilly, Pieper, Hoban & Marsh* (*James G. Marsh* and *Jay G. Baris* of counsel), for appellant.

*Robinson, Silverman, Pearce, Aronsohn & Berman* (*Robert A. Wolf* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J. P.

At the conclusion of this mortgage foreclosure action, the receiver's managing agent applied for an order directing the mortgagee to pay an additional fee representing the

reasonable value of the management services rendered. The claim made was that the services had been rendered with the mortgagee's approval and that they had resulted in a huge increase in the value of the foreclosed property. The mortgagee's principal response to these assertions was that a managing agent's compensation is limited to the sums received and disbursed by the receiver, a relatively minimal amount in this case. Resolution of the issues deriving from Special Term's denial of the application requires interpretation of CPLR 8004 (subds [a], [b]) which, without mentioning managing agents, limit the receiver's compensation to 5% of the sums received and disbursed and provide that the party who moved for the receivership may be compelled to pay the receiver's expenses if the latter lacks the funds to do so.

The instant receivership came about when Litho Fund Equities, the foreclosing mortgagee of a garden apartment complex, moved for the appointment of a receiver and a managing agent, declaring in its supporting papers that the complex was in substantial disrepair. The order of appointment authorized the receiver to employ H. J. Kalikow & Co. as managing agent and "to pay the reasonable value of said Managing Agent's services out of the rents received". Upon entering upon its duties, Kalikow discovered that only 35 of the 256 rental units were occupied and it decided to relocate the remaining tenants as a prelude to total renovation of the premises.

In a letter to Litho, Kalikow disclosed its decision to relocate the tenants, requested the negotiation of a fair fee for its services, and set forth a suggested method for calculating such a fee. The letter evoked no response. In the application for additional compensation, Kalikow — which had received a fee of $1,028 from the receiver — argued that the letter constituted an account stated binding upon Litho; that Litho had directed it to continue the relocation; and that as a mortgagee in possession, Litho's independent relationship with Kalikow supported the latter's right to compensation based on the value of its services. The services allegedly provided by Kalikow included appearances in court actions and administrative hearings, meeting with tenants, supervision of emergency repairs,

and securing of the property against vandalism. Kalikow's moving papers contained an affidavit from a real estate expert who alleged that the management services increased the value of the property by over $4,000,000.

In opposition, Litho contended that Kalikow's remuneration was limited to the $1,028 that had been paid, and that under its order of appointment Kalikow's fee was limited to the rents received. Except for $7,332 in disbursements, Special Term denied the application on the ground that it was improper for Kalikow to have continued operation of the property after it was apparent that it would not generate sufficient income to pay the management fees sought.

We commence our analysis by rejecting Litho's contention that Kalikow's compensation necessarily was restricted to a fee based upon the rents collected by the receiver. Although CPLR 8004 (subd [a]) limits a receiver's commissions to 5% of the sums "received and disbursed by him", the statute does not subject the receiver's expenses to any specific limitation. In addition to attorney's fees (which the statute mentions), a receiver's expenses include the compensation payable to the managing agent (e.g., *Kitt v D.M.V. Estates,* 7 AD2d 291; *Handman v Madonick,* 235 App Div 47; *Cornell Assoc. v Euston Props. Corp.,* 50 Misc 2d 813). The direction in Kalikow's appointment order that the managing agent be paid the reasonable value of its services "out of the rents received" set forth the usual means of payment for such an agent, subject to confirmation by the court upon settlement of the receiver's account (see *East Chatham Corp. v Iacovone,* 25 AD2d 622). But the existence of an appointing order providing for payment out of the rents cannot, in our view, bar an application pursuant to CPLR 8004 (subd [b]) to charge expenses to the party who obtained the receiver's appointment if the receiver lacks funds to defray those costs. This is not to say that an appointing order cannot .contain language prohibiting a receiver from incurring obligations in excess of the funds in his hands without further order of the court (see *Scott v Silberberg,* 251 App Div 27; 13 Carmody-Wait 2d, NY Prac, § 83.71), but that is not the case here.

We also conclude that the factual basis for Special Term's decision was erroneous. While it is the usual rule

that a receiver should discontinue an insolvent business (see, e.g., *Bowersock Mills & Power Co. v Joyce,* 101 F2d 1000), the rule is difficult to apply to tenanted premises whose residents may not be summarily evicted. Considering the nature of the receivership, Special Term's conclusion that Kalikow failed to diligently terminate operations at the premises covered by Litho's mortgage seems unfounded — it took Kalikow six months to clear the premises of tenants and thereafter it was necessary to keep the premises secure.

Nevertheless, we do not accept Kalikow's contention that its letter demanding additional compensation constituted an account stated. Not only did the letter provide for future negotiation of Kalikow's fee (see *Chisholm-Ryder Co. v Sommer & Sommer,* 70 AD2d 429), but it would have been improper for the parties to enter into an agreement for separate compensation because, as an officer of the court, Kalikow was limited to compensation to be awarded by the court (*Salmon v Schenectady Mason Supply Corp.,* 278 App Div 609; *Jamaica Sav. Bank v Florizal Realty Corp.,* 95 Misc 2d 654). Nor could Litho lawfully have become a mortgagee in possession, since once a receiver has obtained rightful possession of property, the possession is deemed the possession of the court and cannot be disturbed without leave of court (*Matter of Christian Jensen Co.,* 128 NY 550; *Walling v Miller,* 108 NY 173; 49 NY Jur, Receivers, § 40).

The real question is whether there were special circumstances that make it equitable to impose additional receivership expenses on Litho even though the expenses exceed the rent collected (see CPLR 8004, subd [b]; *Atlantic Trust Co. v Chapman,* 208 US 360; *East Chatham Corp. v Iacovone,* 25 AD2d 622, *supra; Title Guar. & Trust Co. v Koralek,* 247 App Div 915). The rationale for the general rule prohibiting expenditures beyond the rent collected is that the party who moved for the receivership has no control over the receiver's expenses because the latter is an officer of the court (*Handman v Madonick,* 235 App Div 47, *supra;* 2 Clark, Receivers [3d ed], § 637.1 [a]) and it would be unfair to burden the moving party with charges beyond the amounts collected. But while it is true that the instant

parties could not legally have entered into an agreement for separate compensation, if Litho either consented to or otherwise acquiesced in Kalikow's actions knowing that the rents would be insufficient to pay for those services, it is in a poor position to complain that the receivership expenses were beyond its control (*Kitt v D.M.V. Estates,* 7 AD2d 291, *supra; Bowery Sav. Bank v 566 Amsterdam Ave. Corp.,* 32 Misc 2d 459).

It would have been preferable, of course, for Kalikow to apply for compensation in advance of providing special services (see *Emigrant Ind. Sav. Bank v Feldblum Realty Corp.,* 238 App Div 231), but the failure to obtain such prior judicial sanction does not preclude the court from exercising its discretionary authority based upon special circumstances (see *Vilas v Page,* 106 NY 439; *Kent v West,* 33 App Div 112; *Kronenthal v Rosenthal,* 144 NYS 830). Among the additional factors that bear on the existence of special circumstances are the degree of necessity of the expenses (*Title Guar. & Trust Co. v Abrams,* 248 App Div 595) and the benefit received by the party who moved for the receivership (*Idan Holding Corp. v 244 Water Realty Corp.,* 154 NYS2d 396; *Land v Esrig,* 43 NYS2d 623). The court's discretion in ordering the payment of such additional expenses accords with the equities of the situation (see 2 Clark, Receivers [3d ed], § 637.1[a]; 75 CJS, Receivers, § 303c).

If Kalikow can establish the truth of its allegations, special circumstances might justify the imposition of additional expenses on Litho. Accordingly, there should be a reversal and remand to Special Term for a hearing to explore the underlying facts on the issue of special circumstances, to determine Kalikow's right to additional compensation, and, if there is such a right, to fix the reasonable value of the services rendered.

O'CONNOR, BROWN and RUBIN, JJ., concur.

Order of the Supreme Court, Queens County, dated November 17, 1982, reversed insofar as appealed from, with costs, and matter remanded to Special Term for further proceedings consistent with the opinion herein.