George GASSER and Gasser Chair
Company, Inc., Plaintiffs,

v.

INFANTI INTERNATIONAL, INC.,
Mark Infanti, Nancy Aponte Infanti,
Vittorio Infanti, Marguerita Infanti,
Mariella Infanti, Amboy National
Bank, George E. Scharpf and Sanders
W. Gropper, in his capacity as Receiv-
er of Infanti International, Inc., De-
fendants.

No. 03–CV–6413 (ILG).

United States District Court,
E.D. New York.

March 2, 2005.

Alex Spizz, Todtman, Nachamie, Spizz & Johns, P.C., New York City, for Plaintiffs.

Jay W. Freiberg, Marie A. Tieri, Katten Muchin Zavis Rosenman, New York City, for Infanti defendants.

Helen A. Nau, Pitney Hardin LLP, Morristown, NJ, for defendant Amboy National Bank.

Stan. L. Goldberg, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, New York City, for Receiver Sanders W. Gropper.

George E. Scharpf, Old Bridge, NJ, pro se.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

This Memorandum and Order arises out of the continuing and persistent efforts of two judgment creditors to satisfy a multi-million dollar judgment and the demise of a corporation which the creditors claim is a successor to one of the debtors. Plaintiffs Gasser Chair Company, Inc. ("Gasser Chair") and George Gasser (collectively, "Plaintiffs") obtained a judgment in excess of fifteen million dollars (the "Judgment") against Infanti Chair Manufacturing Corporation ("Infanti Chair") and Vittorio Infanti ("Mr. Infanti") on August 9, 1996. Following entry of the Judgment by this Court, both Infanti Chair and Mr. Infanti filed voluntary Chapter 11 petitions in United States Bankruptcy Court, which petitions were granted. The bankruptcy courts did not discharge the Judgment as against either of them. More than two

years after the Judgment was entered, Infanti International (the "Corporation" or "Infanti International") was founded and incorporated. In this lawsuit, Plaintiffs seek to impose liability upon Infanti International, as a successor to Infanti Chair, and to hold Infanti International liable for the Judgment.

By Order of this Court dated January 8th, 2004 (the "Appointment Order"), familiarity with which is assumed, Sanders W. Gropper was appointed temporary receiver (the "Receiver") of the Corporation at the request of Plaintiffs, authorizing him to take "full and absolute" control of its business and property and directing the Corporation and all of its officers, directors and employees, and any other persons associated with it, to immediately transfer to the Receiver sole control of its property or its proceeds. (Appointment Order ¶¶ 4, 6). The Appointment Order further provides that "the temporary receiver . . . shall be solely responsible for all finances of Infanti International, Inc. including, but not limited to, income received and expenses disbursed." (*Id.* ¶ 5). In addition, the Receiver is required to "keep written accounts, itemizing receipts and authorized expenditures, describing the receivership property and naming the depository of Receivership Funds, which account(s) shall be open to the inspection of any persons having an interest in the receivership property." (*Id.* ¶ 8). On March 31, 2004, the Court amended the Appointment Order to allow the Receiver to engage counsel.

Almost a year after his appointment, the Receiver filed a motion to approve payment of interim compensation accompanied by his first intermediate account. In that motion, he requests payment of a commission in the amount of $61,484.45 for services rendered between January 8, 2004 and November 30, 2004 (the "First Interim Period"). Amboy National Bank ("Amboy"), a creditor of Infanti International, and a cross-claimant in this case,[1] opposes the Receiver's motion, arguing that he is not entitled to a commission until the receivership is terminated, and in the alternative, that the commission sought by the Receiver is excessive. Amboy cross-moves to discharge the Receiver pursuant to N.Y. C.P.L.R. § 6405, alleging that he has failed to perform his duties adequately and that his services are unnecessary.[2]

Since the briefing and oral argument on the pending motion and cross-motion, the parties have, with the Court's assistance, attempted to resolve this matter amicably. These efforts came to a head on February 22, 2005, when all parties met with the Court in light of the Receiver's recent informal report that the Corporation was on the cusp of financial ruin.[3] Unfortunately, an amicable settlement was not reached.

For the reasons that follow, the Receiver's motion for interim compensation is

---

1. As discussed below, Amboy alleges in its cross-claim that it has a priority perfected security interest in certain of Infanti International's property.

2. Defendant Infanti International requested more information from the Receiver concerning his application for a commission and it opposed payment of any commission until it received such information. At oral argument, Infanti International's counsel acknowledged that her client had received all of the information she had requested from the Receiver's

counsel and she therefore had no objection to the payment of the commission. Plaintiffs also supported the payment of the Receiver's commission, and specifically noted the excellent services that he has rendered to the Corporation.

3. These events, not relevant to the Court's determination herein, are set forth in part in the Receiver's counsel's affirmation and reply affirmation submitted as part of his motion for an interim commission and fees.

granted and the interim account is confirmed. Given the Corporation's insolvency, the Court orders the Receiver to conduct a public sale of all of its tangible and intangible assets (the "Assets"), except the patent that was one of the subjects of the complaint, pursuant to the terms and conditions specified below. Further, the Court orders the Corporation to immediately vacate the building it currently occupies, which is owned by Amboy National Bank ("Amboy") and leased to the Corporation.[4] Amboy shall not interfere with the Receiver's access to the premises. His possession of the Assets in his capacity as Receiver shall continue until the public sale is consummated and the Assets sold and delivered to the successful purchaser(s).[5] Pending the termination of that event, Amboy shall be deemed a bailee of the Assets charged with all the obligations of that status. In light of the Corporation's insolvency, Plaintiffs are liable for the Receiver's commission and fees.

## DISCUSSION

### I. Discharge of the Receiver and Insolvency of Infanti International

■ Pending before the Court is Amboy's cross-motion to discharge the Temporary Receiver.[6] N.Y. C.P.L.R. § 6405 states that upon "motion of any party *or upon its own initiative,* the court which appointed a receiver may remove him at any time." (emphasis added). Even though the Court disagrees with Amboy's argument as to why the Receiver should be discharged, the Court nevertheless determines that he should be discharged subject to the conditions discussed below.

■ Amboy argues that the Receiver has "failed to adequately perform his duties." (Amboy Mem. at 7). To the contrary, and as set forth below in greater detail, the Court finds that the Receiver's performance in this case has been excellent.[7] Despite the Receiver's best efforts, all of the parties agree that the Corporation is now insolvent. Courts have held that "it is the usual rule that a receiver should discontinue an insolvent business." *Litho Fund Equities, Inc. v. Alley Spring Apartments Corp.,* 94 A.D.2d 13, 15–16, 462 N.Y.S.2d 907 (2d Dep't 1983). Amboy has submitted a letter application, dated February 24, 2005, in which it asks the Court to appoint it as the administrator for a public sale of the Corporation's assets because it "holds a first priority perfected

4. According to the cross-claim which Amboy filed, Infanti International has never made any rent payments under the lease entered into between the parties. That fact is undisputed.

5. Plaintiffs were the only parties to object to Amboy repossessing the premises immediately (neither Infanti International nor the Receiver did). However, they have no standing to object since Infanti International is the lessee and Amboy the owner.

6. The Court appointed the Receiver pursuant to N.Y. C.P.L.R. § 6401 and thus New York law applies.

7. Amboy also argues that the Receiver should be discharged because he is unnecessary in light of his status report indicating that "nothing unusual was noted" during the First Interim Period. However, this argument misconstrues the reason why the Court appointed the Receiver in the first place—to ensure the Corporation's honest and effective business operations going forward. Unfortunately, as set forth below, the Court orders the Receiver to liquidate the Corporation in light of its financial condition, notwithstanding the Receiver's best efforts to rehabilitate it. *See generally* 13 Weinstein, Korn & Miller, ¶ 6405.01[2], at 64–100 (2d ed. 2004) ("In general, a receiver should not be removed for trivial reasons, but for reasons that cast doubt on the receiver's ability to perform objectively and efficiently").

security interest in and to all of the Company's furniture, equipment and material." (Letter from Helen Nau at 2). The Court finds Amboy's argument unpersuasive. Its assertion is not supported by any evidence presented to the Court. Amboy has merely claimed in this suit, in the form of its cross-claim, that it is a secured creditor of Infanti International, but that claim has not yet been presented to the Court for determination. Plaintiffs, like Amboy, assert that they are a preferred creditor of Infanti International, by virtue of their contention in this case that the Corporation is a successor to Infanti Chair. This assertion, like Amboy's, remains unresolved.[8]

The Court therefore orders the Receiver to conduct a public auction sale of the Assets of Infanti International as specified below. Following the sale, the Receiver shall submit to the Court and all parties an accounting of the sale. The Receiver shall deposit the proceeds of the sale with the Court where they shall remain until the competing claims of Amboy and Plaintiffs (and any other third parties) to the assets of Infanti International are resolved. The Receiver shall be discharged following the public sale and the Court's review and approval of his final accounting.

## II.  Receiver's Commission and Fees

■ Also pending before the Court is the Receiver's motion for an interim commission and fees. N.Y. C.P.L.R. § 8004(a) states as follows: "A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows, but if in any case the commissions, so computed, do not amount to one hundred dollars, the court may allow the receiver such a sum, not exceeding one hundred dollars, as shall be commensurate with the services he rendered." Although, contrary to Amboy's argument, courts have generally interpreted N.Y. C.P.L.R. § 8004 to prevent payment of commissions to a temporary receiver until the receivership is terminated, "courts can allow interim compensation under CPLR § 8004(a), and the [amount of] payment is entrusted to the court's discretion." 14 Weinstein, Korn & Miller, ¶ 8004.01, at 80–52 (1st ed.1985 & 2003); *Wong v. Eng*, 1998 WL 996734, at *3–4 (Sup.Ct. New York Co. Nov. 17, 1998) (granting receiver's application for 5% commission and counsel fees despite objections filed by plaintiff); *In re Studio # 54 Disco, Inc.*, 21 B.R. 308, 312 (Bankr. E.D.N.Y.1982).

■ "[A] receiver is entitled to a maximum commission of 5% of the total sum passing through the receiver's hands, plus his reasonable and necessary expenses."[9] *In re Studio # 54 Disco, Inc.*, 21 B.R. at 312 (citations and internal quotations omitted); *Katz v. Glassworks LLC*, 784 N.Y.S.2d 921, 2004 WL 583831, at *2 (Sup. Ct. New York Co. Mar. 15, 2004) ("A commission is payable based on the value of the assets which came into the hands of the receiver"). The five per cent commission rate is a ceiling, and the Court has discretion to award a lower percentage and must make specific findings either way. *Katz*, 2004 WL 583831, at *2 (citing *Eastrich Multiple Invest. Fund, LP v. Citiwide*

8.  The parties are in the midst of discovery on Plaintiffs' claim that Infanti International is a successor to Infanti Chair.

9.  Other than the commission authorized by N.Y. C.P.L.R. § 8004, a temporary receiver is not entitled to any form of compensation, including a salary, for the performance of his services. *See, e.g., Aloi v. Lizeric Realty Corp.*, 260 A.D.2d 192, 193, 688 N.Y.S.2d 512, 513 (1st Dep't 1999).

*Dev. Assocs.*, 218 A.D.2d 43, 44, 637 N.Y.S.2d 712, 713 (1st Dep't 1996)).

In *New York State Mortgage Loan Enforcement & Administration Corp. v. Milbank Site One Houses*, 151 A.D.2d 424, 425, 542 N.Y.S.2d 632, 633 (1st Dep't 1989), the court held that "the statutory language contemplates that the commission paid to a receiver will be a maximum of 5% of the amount which has been both collected and disbursed by him," as opposed to five per cent of funds collected plus five per cent of funds disbursed. Clarifying this standard, the court held that the commission should be no more than five per cent of "the lesser of the amount found to have been collected and the amount found to have been disbursed" because the purpose of a receiver is the preservation of the property over which he or she has control. *Id.*

■ In a simple case, the amount received and the amount disbursed will be the same. Where they are not, a commission is payable as a percentage of what the court "decided was the value of the assets which came into the hands of the receiver, and which were disbursed or transferred by them." *Betz v. N.J. Refrig. Co.*, 231 A.D. 553, 558–59, 248 N.Y.S. 35, 41 (1st Dep't 1931). When a final commission is fixed, the receiver is required to render a full accounting and document his services in adequate detail or he may be subject to a reduction in his commission. The burden is on the receiver to justify his or her commission.[10] *Katz*, 2004 WL 583831, at *2.

■ Following his appointment, the Receiver conducted a full analysis of the Corporation's business, including its financial books and records, "took possession of all cash and cash receipts" and established a "procedure to monitor the receipt of cash and all disbursements." (Gropper Aff. ¶ 3). He took control of the business operations of the Corporation, and has been intimately involved with the following issues: monitoring Infanti International's receipts and expenditures; negotiating with unpaid vendors and the Internal Revenue Service regarding past tax liability; maintaining its workforce; working to solve the claims of three of its judgment creditors, and responding to allegations that it is infringing Plaintiffs' patents; and obtaining additional funding for the Corporation. (*Id.* ¶¶ 4–9; Reply Affirmation of Stan L. Goldberg ("Goldberg Reply Aff.") ¶ 10). The Receiver has submitted daily calendars reflecting the work that he has performed on behalf of the Corporation, which include contemporaneous time records. These records reflect his substantial and intimate involvement in the Corporation's business affairs throughout his receivership.

The Receiver has also submitted extensive financial information about the Corporation, including an analysis of the three bank accounts over which he maintains control. (Gropper Aff. ¶ 10, Exhs. A–C). These records indicate that during the First Interim Period, he oversaw the expenditure of $1,229,689.06 in disbursements. Based on that figure, he seeks a commission in the amount of $61,484.45, representing 5% of the total amount of disbursements.

Having examined the extensive financial records and information which the Receiv-

---

**10.** "When the receiver presents his claim for compensation, he must itemize each expense for which he seeks reimbursement and demonstrate that it was necessarily incurred." 14 Weinstein, Korn & Miller, ¶ 8004.04, at 80–60 (1st ed.1985 & 2003) (citing *e.g., Pfeifer v. 1770 W. Sixth St. Corp.*, 234 A.D. 777, 777, 253 N.Y.S. 436, 436–37 (2d Dep't 1931); *Long Island City Sav. & Loan Ass'n v. Bertsman Bldg. Corp.*, 123 A.D.2d 840, 841, 507 N.Y.S.2d 640, 641 (2d Dep't 1986)).

er has submitted, the Court finds that he is entitled to the commission he requests. It is clear that he has expended considerable time and effort in maintaining the business operations of the Corporation under very difficult circumstances. (Goldberg Reply Aff. Exh. D). There is nothing in the record which suggests that the nature and quality of the services provided by him in managing its business affairs was anything other than excellent. In his papers, the Receiver acknowledges that despite his best efforts, the Corporation's financial situation throughout the First Interim Period has been weak, at best, leading to the Corporation's insolvency. This is reflected in the application that he submits for his commission, which is based entirely on the Corporation's expenditures. (Goldberg Reply Aff. Exh. C). Against this background, the Court awards the Receiver a commission rate of 5% of all expenditures made by the Receiver during the First Interim Period, representing a total commission of $61,484.45.

■ Infanti International questions the Receiver's payment of legal expenses to his counsel. Where, as here, the order appointing the Receiver permits him to engage counsel, the attorney's fees must be reasonable in light of the services rendered by counsel and the amount of the property held in the receivership.[11] *See, e.g., Capone v. Matteo Realty Corp.,* 237 A.D. 322, 323–24, 261 N.Y.S. 178, 179–80 (2d Dep't 1932) (counsel fees held too large in view of, among other things, the amount of the fund). In his reply papers, the Receiver's counsel submitted an affirmation attaching itemized statements indicating the services that he rendered to his client, a condition precedent to obtaining fees in this Circuit. *See New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983) ("the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit"). The Court has carefully examined these time statements and invoices, and it finds that they are reasonable, particularly in light of the extensive litigation and motion practice that has ensued in this case.

■ In opposition to the Receiver's motion, Amboy alleges that it has valid security interests in the property controlled by the Receiver superior to any claim asserted by the Receiver. Specifically, Amboy claims that to secure the repayment of loans it made to Infanti International in the amount of $1,090,360.53 between July 14, 1999 and December 24, 2003, the Corporation granted Amboy security interests in "substantially all" of its property, and Amboy perfected its security interest by duly recording security agreements and, where applicable, a UCC–1 financing statement. (Cross–Claim of Amboy ¶¶ 30–47). While Amboy is correct that "[w]hen there is a specific lien on the [receivership] property at the time it comes into the receiver's hands, that lien has priority over the receiver's fees and expenses," *see* 14 Weinstein, Korn & Miller, ¶ 8004.07, at 80–68 (1st ed.1985 & 2003) (citing *e.g., Smith v. Adlerman,* 105 Misc. 223, 172 N.Y.S. 682 (1st Dep't 1918)), as noted above, Amboy has not submitted any evidence that it holds a first priority

---

11. The Receiver is generally entitled to recover expenses he has made except those "that are not strictly necessary for the preservation of property placed in the receiver's care or specifically or implicitly authorized by the contents of the receiver's order of appointment," which must be approved by the court before they are made. Weinstein, Korn & Miller, ¶ 8004.04, at 80–61 (1st ed.1985 & 2003) (citing *e.g., Vilas v. Page,* 106 N.Y. 439, 451, 13 N.E. 743 (1887)).

security interest in any of the Corporation's assets, nor has its claim that it holds such an interest, which is disputed, been judicially determined. In short, Amboy's conclusory allegations set forth in a pleading do not prevent the Court from approving payment of a commission to the Receiver.[12]

■ Finally, in its discretion, the Court approves the payment of an interim commission and fees to the Receiver notwithstanding the insolvency of the Corporation. It recognizes that the remaining assets of the Corporation, approximately $43,000, will have to be utilized immediately to pay debts to, among others, the Internal Revenue Service and employees who have recently been terminated.[13] The Receiver shall deposit the money that is realized as a result of the public sale of the Corporation's assets with the Court where it will remain until the claims on it made by Plaintiffs, Amboy, the Internal Revenue Service, former employees and any other third parties are resolved. Given the Corporation's insolvency, and that the Receiver's commission and fees cannot be paid out of Infanti International's assets at the time the Court discharges him, the Court holds that "special circumstances" exist to require Plaintiffs to pay the Receiver's commission and fees. *See* N.Y. C.P.L.R. § 8004(b) ("If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver"); 14 Weinstein, Korn & Miller, ¶ 8004.09, at 80–72 (2d ed.2004) ("Since it would be unfair to leave the receiver without compensation, and the party who sought the receivership is the person most directly responsible for the receiver's employment, it seems fair to put the burden of payment on him") (citing *e.g., Land v. Esrig,* 43 N.Y.S.2d 623 (Sup.Ct. Kings Co.1943)) ("plaintiff may not be heard to object when called upon to meet an ordinary obligation necessary and obviously incidental to the relief which he himself sought, obtained and from which he reaped benefits"). Since the date the Receiver was appointed, and continuing through the recent Court conference on Tuesday, February 22, Plaintiffs have steadfastly supported the Receiver and have complimented him on his excellent work.

In fact, as a result of the Receiver's effective management of the Corporation, Plaintiffs successfully claimed an interest in a patent that was being used by Infanti International. In a recent memorandum and order, familiarity with which is assumed, the Court held that the transfer of the patent from Mr. Infanti, one of the judgment debtors, to his daughter Vicky, was fraudulent. *See Gasser v. Infanti In-*

---

**12.** The Court's ruling, discussed below, which holds Plaintiffs responsible for the Receiver's commission and fees that remain unpaid as of the date the receivership is terminated, will result in Plaintiffs paying the Receiver's full commission and fees given the insolvency of the Corporation. Therefore, the payment of the Receiver's commission and fees would not impact Amboy's ability to collect on its cross-claim if it were to prevail on such claim, despite its argument that the Receiver's commission and fees should not be paid until the

priority of the creditors of Infanti International is resolved.

**13.** On February 25, 2005, the Receiver notified the Court that the Corporation's liability to the Internal Revenue Service was approximately $33,000 and back-wages owed to employees of the Corporation totaled approximately $30,000, far in excess of the Corporation's existing cash reserves.

*ternational, Inc.*, 353 F.Supp.2d 342 (E.D.N.Y.2005). That decision gave Plaintiffs an ownership interest in the patent as a judgment creditor of Mr. Infanti.[14] Therefore, Plaintiffs cannot now complain that they are held responsible for the Receiver's commission and fees. The Receiver is therefore directed to supplement his application for payment of his commission and fees for the time period between December 1, 2004 and the date of the public sale. The Receiver shall be discharged following the Court's review, and if appropriate, approval of his final accounting.

## CONCLUSION

For the foregoing reasons, the Receiver's motion for interim compensation is granted. The Receiver's First Intermediate Account is approved.

The Court further directs the Receiver to conduct a public sale of all of the assets, tangible and intangible, of Infanti International, excluding the patent, but including all equipment, materials and furniture, and including used and partially completed chairs. The Receiver may employ an auctioneer for purposes of conducting the public sale. The Receiver shall conduct the public auction in such manner as in his judgment will result in the best price obtainable for the Corporation's assets, and at the time best suitable, but not later than forty-five (45) days following the issuance of this Memorandum and Order. The Receiver shall send a notice announcing the date of sale to all parties to this action, and shall publish a notice of sale in a newspaper or trade journal most likely to reach the largest number of potential purchasers. The notice of sale shall advise that the purchase of certain chairs for which

the Corporation has completed (or near-completed) orders in the amount of approximately $180,000 that have not been shipped, are claimed to violate the trade dress of chairs manufactured by plaintiff Gasser Chair Company, Inc. and infringe on Gasser's patents. An announcement to that effect shall also be made at the time of sale.

The Receiver, Sanders W. Gropper, of the firm G & K Consultants LLC, 31 East 28th Street, New York, New York 10016, or his counsel, Stan L. Goldberg, of the firm Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, 1065 Avenue of the Americas, New York, New York 10018, shall deposit with the Clerk of Court all funds realized from the public sale of the Assets, to be held in an interest bearing account, and to be maintained in such account until further order of this Court, pending the determination of the competing claims to such funds.

Plaintiffs are ordered to pay the Receiver's unpaid commission and fees as of the date of his discharge which shall occur after he conducts the public sale of the Corporation's Assets and the Court reviews and approves his final accounting.

SO ORDERED.

---

**14.** The disposition of the Patent—whether it should be turned over to the sheriff or a receiver appointed by the Court for sale to satisfy some or all of the Judgment—is await-

ing resolution of Mr. Infanti's recently filed bankruptcy petition which stayed the Court's determination of this issue.