U.S. Bank N.A. v Dcca, LLC (2024 NY Slip Op 04796)

U.S. Bank N.A. v Dcca, LLC

2024 NY Slip Op 04796

Decided on October 2, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 2, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
BARRY E. WARHIT
LOURDES M. VENTURA, JJ.

2020-03997
2020-06721
 (Index No. 53946/19)

[*1]U.S. Bank National Association, etc., plaintiff-respondent, Anderson Hill Capital, LLC, appellant, et al., plaintiff,
v
DCCA, LLC, et al., defendants-respondents; Kirby D. Payne, et al., nonparty-respondents; New York State Department of Labor, et al., intervenors-respondents.

Fishman Decea & Feldman, Armonk, NY (Thomas B. Decea of counsel), for appellant.
Thompson & Knight LLP, New York, NY (Keith M. Brandofino and David V. Mignardi of counsel), for plaintiff-respondent.
Veneruso, Curto, Schwartz & Curto, LLP, Yonkers, NY (Renata F. Casella, Susana Papakanakis, and James J. Veneruso of counsel), for nonparty-respondent Kirby D. Payne.
Pitta LLP, New York, NY (Jane Lauer Barker of counsel), for nonparty-respondent William Schumacher.
Letitia James, Attorney General, New York, NY (Steven C. Wu and Mark S. Grube of counsel), intervenor-respondent pro se and for intervenor-respondent New York State Department of Labor.

DECISION & ORDER
In an action to foreclose a mortgage, the plaintiff Anderson Hill Road Capital, LLC, appeals from (1) an order of the Supreme Court, Westchester County (Gretchen Walsh, J.), dated March 26, 2020, and (2) a money judgment of the same court entered July 2, 2020. The order, insofar as appealed from, upon granting the motion of nonparty Kirby D. Payne, inter alia, to be discharged as temporary receiver, determined that the plaintiff Anderson Hill Road Capital, LLC, was liable for certain expenditures incurred by nonparty Kirby D. Payne relating to alleged violations of the New York State Worker Adjustment and Retraining Notification Act and directed that plaintiff to pay the sum of $2,706,344.51 relating to such alleged violations. The money judgment, insofar as appealed from, upon the order, is in favor of nonparty Kirby D. Payne and against the plaintiff Anderson Hill Road Capital, LLC, in the total sum of $2,771,741.87.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the money judgment is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the intervenors, nonparty Kirby D. Payne, and nonparty William Schumacher appearing separately and filing separate briefs.
As an initial matter, the appeal from so much of the order as, upon granting the motion of nonparty Kirby D. Payne, inter alia, to be discharged as temporary receiver, determined that the plaintiff Anderson Hill Road Capital, LLC (hereinafter Anderson Capital), was liable for certain expenditures incurred by Payne relating to alleged violations of the New York State Worker Adjustment and Retraining Notification Act (hereinafter WARN Act) and directed Anderson Capital to pay the sum of $2,706,344.51 relating to such alleged violations must be dismissed because those portions of the order were superseded by the money judgment (see Matter of JPMorgan Chase Bank, N.A. v Smith, 188 AD3d 1214). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the money judgment.
This action arises out of the abrupt closure of the Doral Arrowwood Resort and Hotel (hereinafter Arrowwood) located in Rye Brook. The defendant DCCA, LLC (hereinafter DCCA), owned Arrowwood, a 114-acre resort which featured "a 373-room hotel, with more than 70,000 square feet of meeting space, a 9-hole golf course and driving range, a sport center, five tennis courts, squash and basketball courts, a restaurant, a pub, a café, and both indoor and outdoor swimming pools" (DCCA, LLC v Cohen, 2020 NY Slip Op 30544[U], *1 [Sup Ct, NY County]). DCCA acquired Arrowwood in 1986. Prior to its closure, Arrowwood had 278 employees and was "an important part of the Westchester community" (id. at *15). In 2005, DCCA obtained a $75 million loan, which became one asset in a trust that constituted a commercial mortgage-backed security. The loan was evidenced by a note and secured by a mortgage encumbering Arrowwood. In May 2015, the plaintiff U.S. Bank National Association (hereinafter the Trustee) became the trustee and the holder of the note, with nonparty CWCapital Asset Management, LLC (hereinafter CWCapital), acting as the loan's "special servicer."
DCCA self-managed Arrowwood through an affiliated entity from the date of acquisition in 1986 through 2015. In 2015, DCCA retained nonparty BMC-The Benchmark Management Company (hereinafter Benchmark) to serve as Arrowwood's property manager, entering into a management agreement. By late 2018, however, the relationship between DCCA and Benchmark had deteriorated, with each entity blaming the other for financial issues that Arrowwood was experiencing. In apparent response to DCCA commencing an action and issuing a letter terminating the management agreement based on Benchmark's alleged breaches thereof, Benchmark issued its own letter terminating the management agreement based on DCCA's alleged breaches, while also expressing its intention to terminate Arrowwood's employees and to send them notices pursuant to the WARN Act. Benchmark copied the Trustee on this letter.
Upon receipt of Benchmark's letter, the Trustee determined that DCCA had purportedly defaulted on various nonfinancial obligations of the terms of its loan agreement. On March 13, 2019, the Trustee commenced this action to foreclose the mortgage. The next day, the Trustee moved, by emergency order to show cause, to appoint a temporary receiver to operate Arrowwood and for a temporary restraining order enjoining Benchmark from, inter alia, ceasing Arrowwood's operations. In its motion, the Trustee requested that the Supreme Court appoint Payne as the temporary receiver. During a hearing on the motion on March 15, 2019, the court granted the Trustee's request to appoint Payne as the receiver, subsequently issuing an order outlining the terms of the receivership and then an amended order (hereinafter the receivership order). Benchmark maintained its role as property manager during the receivership, under the supervision of Payne in his role as temporary receiver.
Shortly after his appointment, Payne discovered that Arrowwood was in substantial arrears on accounts payable, was operating at a deficit, and required a significant investment of funds to continue operating. According to Payne, Arrowwood required an immediate infusion of $1.7 million to continue operating through May 2019. He subsequently submitted a written request for such funding to the Trustee, through CWCapital, and the funds were provided. Thereafter, Payne submitted a second funding request, approved by the Trustee through CWCapital, bringing the total amount advanced to approximately $3 million. Throughout the course of the receivership, Payne [*2]and representatives of Benchmark provided regular updates to CWCapital and DCCA regarding Arrowwood's operations and financial situation.
In or about early December 2019, nonparty DW Partners, L.P., the controlling class representative of the mortgage-backed security, exercised its contractual right to purchase the note at its "fair value" through an entity formed for that purpose, nonparty Anderson Hill Road Loan, LLC. The transaction closed on December 10, 2019. The next day, Anderson Capital purchased the note from Anderson Hill Road Loan, LLC, becoming the sole holder thereof (see DCCA, LLC v Cohen, 2020 NY Slip Op 30544[U], *1). On that same date, December 11, 2019, Payne, aware that the note had been sold but not aware to whom it was sold, submitted another funding request to the Trustee through CWCapital, requesting nearly $1,000,000 in additional funds to cover a shortfall over the coming months. Without the infusion of funds, Payne determined that Arrowwood would not be able to continue operations beyond January 12, 2020. On December 19, 2019, Payne spoke to a representative of CWCapital, who advised him that the new note holder did not intend to provide the requested funding. Payne then notified Benchmark's president, who then indicated that his company would issue termination notices pursuant to the WARN Act on December 24, 2019, in advance of Arrowwood's closing on January 12, 2020. Payne subsequently emailed representatives of CWCapital, DCCA, and the Trustee, among others, to apprise them of the ramifications of not securing the requested funding, including that Benchmark would be issuing the WARN Act notices. He explained, however, that the closure could be avoided if the funding was provided by December 23, 2019. At a subsequent court conference held at Payne's request, an attorney for Anderson Capital advised the Supreme Court that his client had no intention of providing the requested funding. The next day, December 24, 2019, Benchmark issued the WARN Act notices to Arrowwood's employees.
That same day, Payne moved, among other things, to be discharged as temporary receiver. In a subsequent filing in further support of his motion, Payne asserted that the Trustee and/or DCCA should be directed to pay any deficiency in the receivership's account. The Supreme Court thereafter held a hearing on Payne's motion, including on the question of who should pay for the deficiency in the receivership. By order dated March 26, 2020, the Supreme Court granted Payne's motion and directed DCCA to pay approximately $250,000 of Payne's deficit while, as relevant to this appeal, deeming the Trustee and Anderson Capital jointly and severally liable for the remaining deficit, including by directing them to pay the sum of $2,706,344.51 for the WARN Act violation. The court thereafter issued a money judgment entered July 2, 2020, inter alia, in favor of Payne and against Anderson Capital in the total sum of $2,771,741.87. Anderson Capital appeals.
Upon appointment, a receiver is generally charged with "protect[ing] and preserv[ing] the subject collateral property" (103rd Funding Assoc. v Salinas Realty Corp., 276 AD2d 340, 341). As a "general rule," a receiver is "prohibit[ed] [from incurring] expenditures beyond the" value of the "rent[s] [or revenue] collected," since "the party who moved for the receivership [generally] has no control over the receiver's expenses because the latter is an officer of the court and it would [therefore] be unfair to burden the moving party with charges beyond the amounts collected" (Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d 13, 16 [citations omitted]; see Amusement Distribs. v Oz Forum, 113 AD2d 855, 855). However, upon application of the receiver, "CPLR 8004(b) permits a court to direct the party who moved for the appointment of a receiver to pay necessary expenses and compensation which exceed the money in the receiver's hand at the termination of the receivership, [but] 'special circumstances must be demonstrated before this burden is imposed'" (Laffey v Laffey Fine Homes Intl., LLC, 192 AD3d 878, 882, quoting Long Is. City Sav. & Loan Assn. v Bertsman Bldg. Corp., 123 AD2d 840, 841). In determining whether special circumstances exist, a court possesses "discretion in ordering the payment of such additional expenses [as] accords with the equities of the situation" (Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d at 17). "[I]mportant factors for a court to consider are the degree of necessity of the expenses and the benefit received by the party who moved for the receivership" (Laffey v Laffey Fine Homes Intl., LLC, 192 AD3d at 882, citing Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d at 16; see Pondview Corp. v Russand, Inc., 132 AD3d 964, 965-966). It may be appropriate to "burden the moving party with charges beyond the amounts collected" by the receiver in circumstances where that party "either consented to or otherwise acquiesced in [the receiver's] [*3]actions knowing that the [funds available to the receiver] would be insufficient to pay for th[e] [relevant] services" or expenses (Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d at 16-17). Under such circumstances, the party who sought the receivership "is in a poor position to complain that the receivership expenses were beyond its control" (id. at 17; see Aloi v Lizeric Realty Corp., 260 AD2d 192, 193). Courts may also consider, inter alia, whether "the receivership was conducted with the utmost concern for the physical and economic preservation of the property and [whether] the money expended was 'judiciously spent' and was necessary for its preservation" (Sun Beam Enters. v Liza Realty Corp., 210 AD2d 153, 154, quoting Long Is. City Sav. & Loan Assn. v Bertsman Bldg. Corp., 123 AD2d at 841). Other factors may include whether "the receiver's application has unusual merit or whe[ther] delinquency on the part of the judgment creditor has resulted in an increase in the necessary expenses of the receivership or has precluded the collection of greater receipts" (Amusement Distribs. v Oz Forum, 113 AD2d at 856).
Here, the portion of the receivership deficiency at issue relates to a violation of the WARN Act. "In 1988, Congress passed the [federal] WARN Act, which requires certain employers to provide notice to their employees of sudden, significant employment loss so that they could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff" (Schmidt v FCI Enters. LLC, 3 F4th 95, 101 [4th Cir] [internal quotation marks omitted]). "Congress passed the WARN Act after numerous plant closings and mergers took place in the 1970s and 1980s" (Scaffidi v I.W. Indus., Inc., 2007 WL 9706909, *3, 2007 US Dist LEXIS 117087, *6 [ED NY, No. 05Civ5746 (JS) (WDW)]). "During that period, companies were merged, acquired, or closed, causing many employees to lose their jobs, often without notice. In some circumstances, the projected closing was concealed from the employees" (Roberts v Genting New York LLC, 68 F4th 81, 89 [2d Cir] [alterations and internal quotation marks omitted]). The federal WARN Act serves, among other things, to "provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market, and allows the state to provide prompt assistance to displaced workers" (id. [internal quotation marks omitted]). Under federal law, "[t]he WARN Act requires [covered] employers to give employees 60 calendar days' notice in advance of plant closings and mass layoffs" (id. at 88 [internal quotation marks omitted]; see 29 USC § 2102[a]; North Star Steel Co. v Thomas, 515 US 29, 31). "Unless an exception applies, a covered employer violates the [federal] WARN Act when it orders a plant closing or mass layoff without providing each employee, either individually or through her or his representatives, with sixty-days advance notice. The employer is liable to each affected employee for that employee's compensation for each day the required notice was not provided, up to 60 days of pay and benefits" (Roberts v Genting New York LLC, 68 F4th at 89 [citations, alterations, and internal quotation marks omitted]). The New York State Legislature passed its own version of the WARN Act in 2008 (see L 2008, ch 475, § 2). "Like the federal statute, the New York WARN Act requires that qualified employers give employees advance notice of a plant closing or mass layoff" (Roberts v Genting New York LLC, 68 F4th at 92, citing Labor Law § 860-b). However, "[t]he [New York] WARN Act has a lower triggering threshold for its protections" (Kinney v Public Consulting Group, Inc., 2023 WL 2586277, *4, 2023 US Dist LEXIS 47954, *12 [SD NY, No. 22civ2458 (ER)]). "Accordingly, where there is liability under the WARN Act, there is necessarily liability under the New York WARN Act" (Roberts v Genting New York LLC, 68 F4th at 92). "Under the state statute, notice must be given [90], rather than, [60] days in advance," among other distinctions with its federal counterpart (id.).
Contrary to Anderson Capital's contention, it not only failed to preserve for appellate review its contention that Payne did not actually incur WARN Act liability for various reasons, but its counsel expressly conceded before the Supreme Court, in effect, that the WARN Act was violated and that the only issue for the court to determine was the identity of the party or parties responsible for paying the amount due to the employees (see 249-251 Brighton Beach Ave., LLC v 249 Brighton Corp., 217 AD3d 809, 812; Prego v Bartkowski, 216 AD3d 679, 680-681). Anderson Capital also failed to preserve for appellate review its contention that the court erred by directing it to pay the amount due for the WARN Act violations on the ground that it was not the employer of Arrowwood's employees and neither was the Trustee (see 249-251 Brighton Beach Ave., LLC v 249 Brighton Corp., 217 AD3d at 812; Prego v Bartkowski, 216 AD3d at 680-681). In any event, this [*4]contention is without merit. Anderson Capital was not directed to pay the employees for the WARN Act violations based on any finding that either it or the Trustee was their employer. They were not, and the court did not conclude otherwise. Instead, the court determined that special circumstances existed to deem Anderson Capital jointly and severally liable with the Trustee for paying most of the receivership deficiency, including the amount owed to the employees that Payne lacked the funds to pay.
Morever, Anderson Capital's contention that the Supreme Court should not have deemed it liable for paying the WARN Act-related sum because Payne and Benchmark allegedly were at fault for Arrowwood's abrupt closure is similarly without merit. Regardless of whether Payne could have taken additional measures to potentially avoid or minimize the costs associated with a WARN Act violation, the court correctly concluded that the requisite special circumstances existed to deem Anderson Capital—which "stood in the shoes" of the Trustee, its predecessor in interest and the party that moved for the receivership, as its counsel conceded—liable for, inter alia, the portion of the deficiency relating to the WARN Act violations. The Trustee not only moved for the receivership, but specifically recommended Payne's appointment, touting his qualifications and experience. Further, the Trustee knew at the outset of the receivership that an abrupt cessation of operations could trigger a WARN Act violation. The Trustee was also well aware—if not at the time it sought the appointment then shortly thereafter—that Arrowwood was not operating at a profit and required outside funding to continue operations. The Trustee opted to provide such funding on multiple occasions, totaling millions of dollars. Moreover, Payne regularly updated the Trustee, through CWCapital, regarding Arrowwood's operations and finances. Since the Trustee knew of and consented to Payne's operation of Arrowwood at a deficit, and indeed sought the continued operation of Arrowwood in an attempt to maintain the value of its collateral, Anderson Capital is "in a poor position to complain that the receivership expenses were beyond [the] control" of its predecessor in interest (Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d at 17). Notably, Payne's assumption that he would continue to receive funding was not entirely unfounded: he was appointed to continue operating a business, even though it was operating at a deficit, and his appointment was sought by an entity willing to continue funding the deficit. Under the circumstances, to the extent that Anderson Capital contends that Payne could have taken additional steps to avoid WARN Act liability, the same can be said of the Trustee. The Trustee, as Anderson Capital's predecessor in interest, received the benefit it sought from the receivership by way of the continued operation of the resort, thus maintaining the value of its collateral, and the expenses incurred during the receivership, including the WARN Act-related sum, were necessary (see Laffey v Laffey Fine Homes Intl., LLC, 192 AD3d at 882). Since the "the equities of the situation" weighed in favor of directing Anderson Capital to pay the funds owed to the employees for the WARN Act violations, the court appropriately directed it to do so (Litho Fund Equities v Alley Spring Apts. Corp., 94 AD2d at 17).
DILLON, J.P., MILLER, WARHIT and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court